WILLIAM M. CHAMBERS

*v.*

THE PEOPLE *ex rel.* H. H. Fuller, Collector.

*Filed at Springfield March 30, 1885.*

1. TAXATION—*sale of land for taxes—legislative power.* Section 4, article 9, of the State constitution, contains no express grant of power to the legislature to provide for the sale of real estate for taxes, though it clearly recognizes such power, by imposing limitations and restrictions upon its exercise. Viewed merely as a limitation, as it is, there is nothing in it prohibiting the legislature from providing for the sale of real estate for the non-payment of taxes, interest and penalties, and costs, except that the sale shall be made by a general officer authorized to receive State and county taxes, and not by him except in pursuance of an order of some court of record.

2.  SAME—*penalty for non-payment of taxes—constitutionality, as respects the rule of uniformity, or the mode of enforcement.* The addition of the penalty of ten per cent, as required by section 129 of the Revenue act, prior to July 1, 1879, and twenty-five per cent by that section as amended in 1879, is not in violation of the rule of uniformity required by the constitution in respect to taxes. Nor is such provision obnoxious to the objection that it attempts to confer the power of imposing such penalties, upon the county clerk, without affording the tax debtor an opportunity of being heard by a court. The penalty is imposed by law, and not by the ministerial officer who extends the same upon the tax books, and the tax-payer has the right to contest the legality of the same on application for judgment against his property.

3.  SAME—*as to the amount of the penalty, before and since the amendment of 1879.* By section 129 of the Revenue act, before its amendment in 1879, the county clerk, in making up the amount of the taxes for the current year on real property forfeited to the State, was required to add the amount of the back taxes, interest, penalty and printer's fees remaining due on such real property, with one year's interest at ten per cent on the amount of tax due, to the current year's tax. By the amendment of 1879 the interest on the back taxes was changed to twenty-five per cent on all taxes levied and forfeited after the amendment took effect. As to taxes not both levied and forfeited after that time, the penalty of ten per cent was still to apply.

4.  SAME — *to what the penalty may be applied.* That section of the Revenue act does not authorize the addition of the ten or twenty-five per cent on the amount of the costs, interest or penalty accumulated in prior years. The addition of the penalty or per cent is limited to the back taxes on forfeited real estate, and can not lawfully be computed on prior penalties, or interest, or costs.

5.  SAME—*to what taxes the twenty-five per cent penalty may apply.* The twenty-five per cent penalty under the amendment of 1879, applies only to taxes levied and forfeited after the first day of July, 1879, and is not properly chargeable to the State tax of that year which was both levied and forfeited before the amendment took effect; but it is otherwise in respect to the county tax, which could not be levied until after that time. So the road, school and municipal taxes of 1879 may all be levied before or after that time.

6.  SAME—*the one per cent per month penalty after the first of May, as a cumulative penalty.* Section 127 of the Revenue act, imposing one per cent per month on all delinquent and unpaid taxes after the first day of May in each year, is cumulative to the twenty-five per cent penalty imposed by section 129 as amended in 1879, and applied to the taxes of 1880 and 1881.

7.  SAME—*printer's fees—of the amount chargeable.* The law does not authorize more than ten cents to be charged in each year's tax against town or city lots, as printer's fees.

8.  SAME—*error in extending costs, etc.—effect on the validity of the judgment for taxes.* A judgment against lots for a sum not exceeding the

proper amount authorized by law, will not be reversed because of an error of the county clerk in extending too great a sum for printer's fees, and interest on interest, and costs. His mistakes in this respect will not be allowed to affect injuriously the public interests.

9. SAME—*back taxes—requisites of the collector's report.* The statute does not require that the collector's return or delinquent list shall show the years for which the back taxes are due. The requirement of section 188 of the Revenue law that the list shall show the year or years for which the taxes or assessments are due, and the valuation of the property, has reference only to the current year's taxes. The proceeding for the collection of back taxes is to be found in sections 129 and 229, which do not require a statement of the years for which they are due.

10. SAME—*back taxes—of the mode of collection.* The payment of the current year's taxes will not defeat an application for judgment against lands or lots for the back taxes due thereon, and the penalties, interest and costs.

11. SAME—*purchaser at judicial sale—liability for taxes.* A purchaser of town lots under a decree in a proceeding for partition, ordering their appraisal and sale, subject to taxes due thereon, does not become personally liable for such taxes. He will stand in the same position as any other grantee whose deed is made subject to an existing incumbrance. If he assumes to discharge the same by retaining a sufficient amount of the purchase money for that purpose, he becomes personally responsible to the holder of the incumbrance.

12. AMENDMENT OF STATUTES—*of the constitutional mode.* Section 13, article 4, of the State constitution, which provides "that no law shall be revived or amended by reference to the title only, but the law revived or the section amended shall be inserted in the new act," is fully met and complied with where the amended section is set out in full, as amended. It is not necessary to set out in full the original section in the amending act.

APPEAL from the County Court of Coles county; the Hon. CHARLES BENNETT, Judge, presiding.

At the May term, 1883, of the county court of Coles county, the collector of said county made application for judgment against lots 1, 16, 17 and 18, in block 1, original town of Charleston, for the delinquent taxes for the years 1871 to 1881, inclusive, the current taxes for the year 1882 having been paid, which application was allowed. The following is a copy of the transcript of the delinquent list, and the judgment entered thereon:

**ORIGINAL TOWN OF CHARLESTON.**

| | | | | |
|---|---|---|---|---|
| Remarks......... | Appealed | Appealed | Appealed | Appealed |
| Amount of judgment.......... | $148 79 | 106 87 | 871 54 | 172 92 |
| Costs........... | 23 | 23 | 23 | 23 |
| Am't brought over for which judgment is asked... | $168 59 | 126 60 | 1026 52 | 202 80 |
| Total carried over as amounts for which judgment is asked........ | $168 59 | 126 60 | 1026 52 | 202 80 |
| Interest after May 1, (sec. 177)..... | $1 67 | 1 25 | 10 16 | 2 01 |
| Total tax......... | $166 92 | 125 35 | 1016 36 | 200 79 |
| Back tax, interest and costs forfeited subsequent to July 1, 1879..... | $43 07—1879-80-81 | 28 99—1879-80-81 | 228 87—1879-80-81 | 50 39—1879-80-81 |
| Back tax, interest and costs forfeited prior to July 1, 1879............ | $123 85—1871-1879 | 96 36—1871-1879 | 787 49—1871-1879 | 150 40—1871-1879 |
| State equalized valuation....... | $125 00 | 83 00 | 664 00 | 105 00 |
| Block............ | 1 | 1 | 1 | 1 |
| Lot.............. | 1 | 16 | 17 | 18 |
| In whose name assessed. | H. H. Davidson | H. H. Davidson | same | same |

The application for judgment was resisted by W. M. Chambers, who had recently purchased the property at a partition sale. There were altogether seventeen written objections interposed by him, none of which were deemed sufficient, and judgments were thereupon entered against the said lots for the respective amounts above shown. By his appeal, Chambers brings the case to this court for review.

For the purpose of the present appeal it is stipulated that lots 1, 16, 17 and 18, block 1, original town of Charleston, Coles county, Illinois, were forfeited to the State of Illinois, at the tax sale of 1872, for non-payment of the said taxes due thereon for the year 1871; that the said lots were in like manner forfeited each succeeding year, up to and including the year 1882, for the non-payment of taxes, interest and costs of the year 1871 and all the succeeding years, up to the time of each forfeiture. It was also stipulated that the taxes which were extended against each of

the said lots for each of the said years, respectively, were as follows:

|      | Lot 1. | Lot 16. | Lot 17. | Lot 18. |
|------|--------|---------|---------|---------|
| 1871 | $7 16  | $6 44   | $51 57  | $9 31   |
| 1872 | 7 43   | 6 70    | 53 50   | 9 67    |
| 1873 | 8 96   | 6 13    | 47 78   | 8 66    |
| 1874 | 9 47   | 6 33    | 50 42   | 9 47    |
| 1875 | 7 18   | 5 37    | 51 01   | 8 93    |
| 1876 | 9 71   | 7 07    | 66 52   | 12 50   |
| 1877 | 8 86   | 5 92    | 47 17   | 10 35   |
| 1878 | 10 62  | 7 05    | 56 43   | 12 36   |
| 1879 | 8 00   | 5 32    | 42 56   | 9 31    |
| 1880 | 8 76   | 5 85    | 46 72   | 10 25   |
| 1881 | 9 30   | 6 21    | 49 49   | 10 88   |

That the amounts for which each of said lots were forfeited, for each of said years, were as follows:

|      | Lot 1. | Lot 16. | Lot 17. | Lot 18. |
|------|--------|---------|---------|---------|
| 1872 | $7 66  | $6 94   | $52 07  | $9 81   |
| 1873 | 15 81  | 14 84   | 111 28  | 20 96   |
| 1874 | 26 86  | 22 96   | 170 69  | 32 22   |
| 1875 | 39 53  | 32 10   | 238 69  | 56 10   |
| 1876 | 51 17  | 41 19   | 291 60  | 71 15   |
| 1877 | 66 51  | 52 89   | 387 79  | 91 25   |
| 1878 | 82 43  | 64 60   | 473 24  | 103 05  |
| 1879 | 101 35 | 78 16   | 578 15  | 125 77  |
| 1880 | 120 74 | 92 27   | 685 37  | 149 20  |
| 1881 | 124 13 | 94 58   | 765 72  | .149 76 |
| 1882 | 149 03 | 112 41  | 908 50  | 179 32  |

That the costs against each of said lots, in 1872, were fifty cents, and in each subsequent year were fifty-one cents, and those amounts were added each year, and included in the amount for which each lot was forfeited, so that each forfeiture included the costs of all preceding years, as well as of the year in which the forfeiture occurred; that each of the amounts contained in the above table includes the amount of all costs which had accumulated against each lot, respectively, from 1872 up to the time of the forfeiture, which amount was, in the case of each lot, as follows: 1872, fifty cents;

33—113 ILL.

1873, $1.01; 1874, $1.52; 1875, $2.03; 1876, $2.54; 1877, $3.05; 1878, $3.56; 1879, $4.07; 1880, $4.58; 1881, $5.09; 1882, $5.60; that the residue of the amount of the forfeiture of each lot for each year, was tax and interest, or penalty; that the tax judgment, sale, redemption and forfeiture record of 1881 shows as follows, in regard to the back taxes on said lots, viz:

|  | Back tax, interest and costs forfeited prior to July 1, 1879. | | Back tax, interest and costs forfeited subsequent to July 1, 1879. | |
|---|---|---|---|---|
| Lot 1 | 1871-2-3-4-5-6-7 and 1878— | $102 35 | · 1879— | $11 29 |
| Lot 16 | 1871-2-3-4-5-6-7 and 1878— | 79 63 | 1879— | 7 66 |
| Lot 17 | 1871-2-3-4-5-6-7 and 1878— | 650 82 | 1879— | 60 09 |
| Lot 18 | 1871-2-3-4-5-6-7 and 1878— | 124 30 | 1879— | 13 22 |

That the tax judgment, sale, redemption and forfeiture record of 1882 shows as follows, in regard to the back taxes on said lots, viz:

|  | Back tax, interest and costs forfeited prior to July 1, 1879. | | Back tax, interest and costs forfeited subsequent to July 1, 1879. | |
|---|---|---|---|---|
| Lot 1 | 1871-1878— | $112 59 | 1879-1880— | $25 16 |
| Lot 16 | 1871-1878— | 87 60 | 1879-1880— | 16 98 |
| Lot 17 | 1871-1878— | 715 90 | 1879-1880— | 133 61 |
| Lot 18 | 1871-1878— | 136 73 | 1879-1880— | 29 43 |

That the objector, W. M. Chambers, Jr., paid the taxes of the year 1882 on said lots before application was made for judgment, which payment was received and receipted for by the collector, leaving the taxes of the previous years unpaid.

Messrs. FRYER, CUNNINGHAM & STODDERT, for the appellant:

Section 9, article 4, of the constitution, only authorizes the legislature to provide for the sale of land for the non-payment of taxes and special assessments,—not for penalties and interest. The legislative power, however broad, does not go

beyond the right to levy taxes for public purposes. Cooley on Taxation, 42.

When does the penalty fixed by the statute become a part of the tax? If the tax is paid, how is the penalty to be collected? Not as taxes, for penalties are not taxes.

Section 11, article 2, of the constitution, requires all penalties to be proportionate to the nature of the offence. A failure to pay taxes may be declared an offence, and punished, but the legislature can not authorize the sale of land to pay the penalty of the offence. Before conviction of an offence, a party has a right to a trial by jury.

The addition of ten and twenty-five per cent is highly penal, and the statute imposing the same does not apply retrospectively. *People* v. *Peacock*, 98 Ill. 172.

In *Scammon* v. *Chicago*, 44 Ill. 279, the court held that the addition of five per cent for delinquency in payment of special assessments, was void, and that case denies the right of the legislature to empower a ministerial officer to impose penalties.

The amendment of 1879, of section 129, was not made in conformity with section 11, article 4, of the constitution. That requires the section attempted to be amended to be set out in the new act, which was not done. There is a marked difference between the words "amended" and "as amended."

The statute, if valid, authorized the clerk to add ten per cent on the amount of back tax due each year,—not on the taxes, interest and costs, as was done in this case. The record shows that fifty cents for 1872, and fifty-one cents for each subsequent year, was added as costs for printer's fees, while the statute allows only ten cents. Rev. Stat. chap. 53, sec. 22.

The collector's delinquent list does not show the back taxes forfeited each year, but simply the aggregate of back taxes, interest and costs. Section 188 of the Revenue law requires the return to show the year or years for which such taxes were due. *Mann* v. *People*, 102 Ill. 346.

The court could not render a judgment in this case, for the reason no judgment was asked for the current year. Judgment can not be rendered for back taxes separate from the tax of the current year. Revenue law, sec. 129; *Stamposki* v. *Stanley*, 109 Ill. 210.

Appellant, by his purchase under the decree, did not personally assume the payment of the taxes charged against the lots. He simply took subject to whatever taxes were a legal charge on the property.

Mr. S. M. LEITCH, and Messrs. DUNN & CONNOLLY, for the appellee:

The burden of proof rests upon the party resisting the application for judgment. Rev. Stat. 1874, chap. 120, sec. 191; *Durham* v. *People*, 67 Ill. 416; *Chiniquy* v. *People*, 78 id. 570; *Mix* v. *People*, 86 id. 312.

The statute does not require the collector's return to show the several amounts of the back tax for the different years, or the valuation for each year. *Law* v. *People*, 84 Ill. 142; *Pike* v. *People*, id. 80.

The judgment was not rendered for too great a sum, being for less than that asked for. The mistake of the clerk in his erroneous additions of penalties can not defeat the taxes and penalties legally authorized. Whatever improper interest and costs have been charged by the clerk, the record shows the judgment was for less than that shown to be actually due on each lot.

The statute requires the clerk to add the back tax to the tax of the current year, and it is a part of the aggregate amount so added together, and a payment of a part of it does not discharge the whole of such aggregate amount.

Appellant, by his purchase of these lots subject to the taxes due thereon, as found by the decree under which he claims, is in no position to dispute these taxes. By his purchase he has received property he has not paid for, to the

extent of these taxes. *Insurance Co.* v. *Littlefield*, 67 Ill. 368; *Pinckard* v. *Milmine*, 76 id. 453; *Byrne* v. *Morehouse*, 22 id. 603; *Valentine* v. *Fish*, 45 id. 462; *Henderson* v. *Bellew*, id. 322; *Pike* v. *Crist*, 62 id. 464.

Reasonable penalties for delay in paying taxes, where the tax-payer may be heard to contest his delinquency before judgment, may be provided, and enforced by sale of his land. Cooley on Taxation, 313; *Bristol* v. *Chicago*, 22 Ill. 587; *People* v. *Peacock*, 98 id. 172; *Scammon* v. *Chicago*, 44 id. 278.

Section 129 was properly amended in 1879. Appellant's view would render invalid nearly all the amendments of the statute since the new constitution was adopted.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This case is now before us on a rehearing, allowed upon the petition of appellee, which opens up all questions for reconsideration that properly arise upon the record, or that were discussed by counsel or passed upon by the court at the former hearing.

The judgment sought to be reversed is assailed by appellant's counsel on numerous grounds. All the positions assumed by them which are deemed of sufficient importance to notice, are fully met by the opinion filed in the case upon the former hearing, which opinion, with a slight modification, we entirely approve, saving an error of fact, hereafter to be noted, which is of so serious a character as to require a change in the final result. Such being the case, it will be sufficient for the present purpose to briefly summarize the points made and decided upon the former hearing, referring counsel to the opinion then filed for a more elaborate discussion of the grounds upon which the decision is placed.

*First*—It is contended the legislature has no power to provide for the sale of land in a summary way for the non-payment of interest on forfeited or back taxes, or for a penalty imposed for the non-payment of taxes,—that it has power to

provide for the sale of land for *taxes*, only.   Section 4, article 9, of the present constitution, is referred to as sustaining this position.   There is nothing in the section mentioned, as we conceive, that is inconsistent with the right of the legislature to authorize the sale of delinquent lands for such interest and penalties in connection with the taxes due thereon.   The right to levy and collect taxes to defray the legitimate expenses of government is inherent, and it is erroneous to suppose that the section of the constitution in question confers this right. It is a mere limitation upon the taxing power, and considering it in that light, it is very clear there is nothing in it prohibiting the enactment of such a law.

*Second*—It is claimed the legislature has no constitutional power to authorize a mere ministerial officer to impose a fine or penalty upon the delinquent tax-payer.   That is certainly' true, but we fail to perceive the application of that principle to a tax proceeding properly conducted under the statute. In that, as in all other cases, the law itself imposes the penalty, but before it can be enforced against a particular individual there must be a judicial inquiry, and the supposed delinquent must have an opportunity to be heard after notice, either actual or constructive.   It is hardly necessary to say this is clearly and amply provided for in a proceeding to obtain judgment against lands for delinquent taxes.   When application is made for judgment in such cases, unless notice has been given to the owner in the manner required by law no steps can be taken in the case until the law has been complied with in that respect, after which, if the owner has any defence, he must, as in any other case, appear and present it, otherwise judgment will, of course, go against him.   This is all that is of it.   There is manifestly nothing in the point. *Smith* v. *The People*, 94 Ill. 229.

*Third*—It is also contended that the amendment of the 129th section of the act of 1872, by the act of 1879, is invalid, because the amendatory act does not set out in full

the section proposed to be amended, the claim being that an amendment thus made is in conflict with section 13, article 4, of the constitution, which provides "that no law shall be revived or amended by reference to the title only, but the law revived or the section amended shall be inserted in the new act." We understand the requirement of this provision of the constitution is fully met if the amended section is set out in full, *as amended.* This was done. It follows, therefore, the amendment in question is constitutional and valid. Section 129, as amended by the act of 1879, is as follows: "In all cases where any real property has heretofore been, or may hereafter be, forfeited to the State for taxes, it shall be the duty of the clerk, when he is making up the amount of tax due on such real property for the current year, to add the amount of back tax, interest, penalty and printer's fees remaining due on such real property, with one year's interest, at ten per cent, on all taxes heretofore forfeited, and twenty-five per cent on all taxes hereafter levied and forfeited on the amount of tax due, to the tax of the current year, and the aggregate amount, so added together, shall be collected in like manner as the tax on other real property for that year may be collected: *Provided,* that the county clerk shall first carefully examine said list, and strike out therefrom all errors, and otherwise make such corrections as may be necessary with respect to such property or tax." By this section, before thus amended, the clerk, in making up the amount of taxes due for the current year on real property forfeited to the State, was required "to add the amount of back tax, interest, penalty and printer's fees remaining due on such real property, with one year's interest, at ten per cent, on the amount of tax due, to the tax of the current year." By carefully comparing the original with the amended section, it will be seen the only effect of the amendment was to change the amount of interest from ten per cent to twenty-five per cent on all taxes *levied and forfeited after the amendment* went

into operation. As to forfeited taxes which were not *both*
*levied and forfeited* after that time, the penalty of ten per
cent was still to apply. In respect to the taxes of 1879, it
was assumed, and so stated on the former consideration of
this case, that the twenty-five per cent penalty could not
properly be applied to the taxes for 1879, for the reason they
could not have been both levied and forfeited after the first
of July of that year, when the act took effect. This state-
ment was inadvertently made, and is accurate only as to the
State taxes. As to county taxes, they can not be lawfully
levied until in September. (See Rev. Stat. chap. 120, sec.
121.) So, also, as to road, school and municipal taxes, they
may all be levied after the first of July, though they might
lawfully be levied before that time. See Rev. Stat. sec. 119,
chap. 121, sec. 44, chap. 122, and sec. 111, chap. 24.

The chief trouble in this case, and that which, on the
former hearing, led to a misapprehension as to what was in-
cluded in the judgment, results from the fact that the clerk,
in making up the amount of taxes from year to year, erro-
neously added interest on the interest and costs embraced
in former forfeitures, and also erroneously included in each
of these computations fifty-one cents costs, whereas the law
allowed but ten; and if the judgment had been rendered, as
was assumed before, for the full amount of these estimates,
as is shown by the tax books, as well as by the delinquent
list itself, the judgment would clearly have been erroneous,
as before stated. But upon an examination of the judgment
itself, we find that it is much less than the amount for which
judgment was demanded by the collector, as shown by the
delinquent list and tax books. Thus, the amount of taxes
charged against these lots, as shown by the delinquent list,
and for which judgment was asked, is as follows: Against
lot 1, $168.59; against lot 16, $126.60; against lot 17,
$1026.52, and against lot 18, $202.80; whereas, the actual
judgments rendered against said lots are, respectively, for

$148.79, $106.87, $871.54, and $172.92, besides twenty-three cents costs in each case, making a difference in the aggregate of $224.39. This difference will be found by actual calculation, when the various sections of the statute relating to the subject are given their proper effect, to more than cover the improper items above mentioned, which were included by the clerk in his annual computations of the amount of taxes, interest, etc., due on the lots. This, indeed, does not seem to be seriously questioned by appellant in his final argument,—at least he does not give, or even suggest, any mode of computation, based upon the sections of the statute relating to the subject, by which it will appear the judgments against these lots are for too much; but the claim rather is, as we understand counsel, that inasmuch as the record is conceded to show that the clerk, from year to year, included improper items in his computations, any judgment founded upon such a record, although confessedly for no more than is justly due, will be invalid. We can not concur in this view. To so hold would be saying, in effect, that the taxes, interest and costs properly chargeable against these lots can not be enforced against them at all. Surely, the mere mistakes of the clerk ought not to be visited with consequences so serious, especially as they affect public interests only.

We have not deemed it necessary or proper to set out the computation by which the conclusion now reached is verified, but the facts are all stated, which will enable any one who desires, to test its correctness for himself. We will simply add, in this connection, for the benefit of those who desire to do so, that in making such computation it is not only necessary to keep in view section 129 of the Revenue act, both before and after its amendment in 1879, but also section 177 of the same act. This section is cumulative, and is applicable to the taxes for 1880 and 1881. It provides: "All real estate upon which taxes remain due and unpaid on the 10th day of March, annually, or at the time the town or dis-

trict collector makes return of his books to the county collector, shall be deemed delinquent, and all such due and unpaid taxes shall bear interest after the first day of May, at the rate of one per cent a month," etc.   In applying the amendatory act of 1879, if necessary to sustain the judgment, it will be presumed that all the taxes of that year, except the State taxes, were levied *after* the first of July, when that act took effect.

Upon the facts, as we now understand them, we are satisfied the judgment of the court below is right, and it will therefore be affirmed.

*Judgment affirmed.*

The following is the opinion, as prepared by Mr. JUSTICE DICKEY, which was rendered on the original hearing of this case, and to which reference is made in the foregoing opinion of the court:

Mr. JUSTICE DICKEY:   It is first insisted that the legislature has no power to provide for the sale of land for the non-payment of interest or penalties upon taxes levied thereon, and section 4, of article 9, of the State constitution, is referred to as sustaining this position.   That section declares that "the General Assembly shall provide, in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county having authority to receive State and county taxes, and there shall be no sale of said real estate for any of said taxes or assessments but by said officer, upon the order of some court of record."   This section of the constitution contains no express grant of power to the General Assembly, and yet it clearly recognizes a power in that body to provide for the sale of real estate for taxes.   Instead of a grant of power, it is rather a limitation or restriction upon the exercise of such

power, and is intended for the regulation of such sales by a uniform rule or method of procedure. Without this section, the power of the legislature in respect to providing for the sale of land for taxes and special assessments, and the mode to be pursued in making sales, would have been plenary. With it, such a sale must be made by a general officer authorized to receive State and county taxes, and not by him except in pursuance of an order of some court of record. The law is well settled that the legislative power of a State is unlimited, except by the State and Federal constitutions. Our State constitution grants all legislative power to the General Assembly, subject, only, to the restrictions contained therein, and in the constitution of the United States. The General Assembly having power to provide for the levy and collection of taxes for the various purposes named in the constitution, it has the power, as a necessary incident, to adopt any and all proper means adequate to accomplish the principal thing, subject, only, to constitutional restrictions. It might with equal propriety be claimed that the costs incurred should not be included in a judgment against land for taxes.

Reference is made to *Scammon et al.* v. *City of Chicago*, 44 Ill. 269, as holding that the imposition of a penalty of five per cent against a tax-payer for not paying by a day named, was in violation of the constitutional provision requiring taxes to be uniform, and that the power to impose or add a penalty can not be conferred on a ministerial officer without the tax-payer having an opportunity to be heard. The addition of the penalty of ten per cent and twenty-five per cent, as required by section 129 of the Revenue act, does not violate the rule of uniformity required by the constitution. The provision of the statute is not partial in its operation, but applies to all tax-payers alike, who may suffer their taxes to remain unpaid until their property is forfeited to the State. In the case just referred to, this court, on a rehearing, said: "That the legislature may authorize the courts to impose and render

a judgment for such a penalty, we have no doubt; but we do not believe that such a power can be conferred upon a mere ministerial officer, without any opportunity to be heard by the tax-payer." The statute here governing (Revenue act, sec. 129,) does not attempt to confer power on the county clerk to determine whether a party has incurred the penalty therein provided, but it, in effect, itself imposes the same. If any question arises as to whether a party has incurred the penalty, he has an opportunity to be heard by the court, on application for judgment, and have the matter adjudicated. In adding such penalty the clerk does not impose the same, any more than he does the back tax or costs. In the case of *People* v. *Smith*, 94 Ill. 229, the court say: "The addition which the clerk was required to make to the back tax, seems to have been required as a penalty upon the owner of the land for a failure to pay the taxes due, at the proper time, and we perceive no reason why it should not be imposed. Suppose the legislature had provided that when the tax due upon a tract of land was not paid, and the land was forfeited to the State, the clerk, in extending the taxes for a subsequent year, should add fifty per cent to the back taxes as a penalty upon the owner for a failure to pay his taxes when due. No reason is perceived why a provision of this character might not be enforced. If it could, upon the same principle and for a like reason the clerk could, under section 129, add to the back taxes ten per cent interest for one year, and a printer's fee, as a penalty."

It is next insisted that section 129 of the Revenue act of 1872 was not amended in 1879 in the manner required by section 11, article 4, of the constitution, which provides, "that no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act." The section, as amended, was inserted in full in the amendatory act of 1879, but it is claimed that this is not a compliance with the constitutional

provision, and that it requires the original section to be set out in full in the amending act. We can not give our assent to this view. To do so would be to hold many important amendments of preëxisting statutes as void, and it would be difficult to calculate the disastrous consequences of such a holding. Both the legislative and executive departments of the State government have given this constitutional provision a more reasonable construction. There seems to be no difference between the words, "the section amended," and "the section as amended." The object of the provision was to give members of the General Assembly a better opportunity to inform themselves of the scope and effect of the proposed amendment, and see the bearing the change would have upon the meaning of the section, taken as a whole, and know more readily the meaning of the section after its amendment,— and this is accomplished by inserting the entire section as amended. In the case now being considered, the original section required the back tax on lands forfeited to the State, etc., remaining due, with one year's interest at ten per cent on the amount of tax due, to be added to the tax of the current year. By the amendment this is changed as to all taxes levied and forfeited after July 1, 1879, by increasing the interest to be added to twenty-five per cent. If this amendment had been made by reference to the original section, only, without giving the section as amended, both the old and the new law would have to be examined to know the force and effect of the words added, in the amendment. See *Timm* v. *Harrison*, 109 Ill. 597.

Section 129 of the Revenue law, as amended in 1879, is as follows : "In all cases where any real property has heretofore been, or may hereafter be, forfeited to the State for taxes, it shall be the duty of the clerk, when he is making up the amount of tax due on such real property for the current year, to add the amount of back tax, interest, penalty and printer's fees remaining due on such real property, with one year's

interest at ten per cent on [all *taxes* heretofore forfeited, and twenty-five per cent on all *taxes* hereafter levied and forfeited, on] the amount of tax due, to the tax of the current year; and the aggregate amount so added together shall be collected in like manner as the tax on other real property for that year may be collected : *Provided,* that the county clerk shall first carefully examine said list, and strike out therefrom all errors, and otherwise make such corrections as may be necessary with respect to such property or tax." The words in brackets are those added by the amendment. This section, as amended, required the county clerk to add ten per cent on the amount of all such back taxes due each year, in case of a forfeiture of the property before July 1, 1879, and twenty-five per cent on taxes levied and forfeited after that date, to such back taxes, printer's fees and the current year's tax, but it did not authorize the addition of such per cents on the amount of the costs, *interest* or *penalties* which had accumulated in preceding years. This interest or per cent is "on all *taxes* heretofore forfeited," and "on all *taxes* hereafter *levied and* forfeited." (*People ex rel.* v. *Gale,* 93 Ill. 127; *People* v. *Smith,* 94 id. 228; *Belleville Nail Co.* v. *People ex rel.* 98 id. 399.) In this case it is evident that the clerk, in extending the tax of each current year after 1872, added to the same all back taxes, interest and costs included in these forfeitures, and interest not only on taxes for which the land had been forfeited, but also interest on *such interest,* and on the costs embraced in such former forfeitures. This was done without authority of the law. Take lot 17, for instance. The tax of 1871 was $51.57, to which was added fifty cents costs, making $52.07, for which sum the lot was forfeited at the tax sale in 1872. In extending the tax for the year 1872, (which was $53.50,) the clerk added $52.07 as forfeited back tax, fifty-one cents printer's fees, and $5.20 interest, at ten per cent on $52.07, which includes the costs of 1871,—making in all $111.28 total charges for 1872 and the amount of the for-

feiture in 1873. To this he added the current tax of 1873, being $47.78, fifty-one cents costs, and $11.12 interest on the whole amount of the forfeiture ($111.28,) including interest on costs, and interest on interest on the tax of 1871, a second time.

It may be observed, in respect to the interest or penalty of twenty-five per cent provided for in the amendment of section 129, (in force July 1, 1879,) that this increased interest applies only to taxes after that date *levied* and *forfeited,* and not to forfeitures after that date in respect to taxes *levied* before that amendment took effect. The current tax of the year 1879 could not have been *levied* and *forfeited* subsequent to July 1, 1879, and hence the twenty-five per cent could not be added until after the year 1879, and then it can not be computed upon all the back taxes of that and prior years, but only upon such taxes as were *levied* after July 1, 1879, and in respect of which there has been a forfeiture for non-payment. The amendment is penal in its character, and the courts should not endeavor to make it more so by any strained or technical construction. The record shows that fifty cents for 1872, and fifty-one cents for each succeeding year, was added to the current and other tax, as printer's fees. This was not authorized by law, the statute allowing only ten cents printer's fees for each year. Rev. Stat. chap. 53, sec. 22.

It is also insisted that section 188 of the Revenue act requires the collector's return or delinquent list to show the year or years for which the back taxes were due, and the amount which was due for each of the several years, from 1871 to 1881, inclusive. That section provides: "The collector shall transcribe into a book prepared for that purpose, and known as 'the tax judgment, sale, redemption and forfeiture record,' the list of delinquent lands and lots, which shall be made out in numerical order, and contain all the information necessary to be recorded, at least five days before the commencement of the term at which application for judg-

ment is to be made,—which book shall set forth the name of
the owner, if known; the proper description of the land or
lot; *the year* or *years* for which the tax or special assessments
are due; the *valuation* on which the tax is extended." The
requirement that the list shall show the year or years for
which the tax or assessments are due, and the valuation of
the land or lot, has reference more directly to the current
year's taxes remaining unpaid, which are demanded for the
first, and have no reference to taxes for which lands have
been forfeited. To require the same particularity in regard
to the back taxes of many years for which the land has been
forfeited, would seem to impose an unreasonable, if not an
impracticable, labor, without any corresponding advantage.
Such a practice would render the collector's warrant in such
cases very complicated and voluminous. By resort to the
former records of the judgments under which the forfeitures
were had, the tax-payer can find the several valuations, and
other details. Having been furnished to him once, the legis-
lature did not consider it necessary that all these details
should be repeated on the record, where the addition of such
back taxes is required to be made to the taxes of the current
year. No reason is shown why the collector's report should
show the amount of back tax under forfeiture for each of
several years, any more than the valuation of each year.
Section 182 has no reference to back taxes for which land
has been forfeited to the State. The proceeding for the col-
lection of taxes under forfeitures is prescribed in sections
129 and 229 of the Revenue statute. In neither of these
sections is there found any requirement that the years for
which such taxes were assessed and levied shall be stated in
the return to the court. (*Pike* v. *People*, 80 Ill. 82.) Such
a statement seems to be wholly unnecessary, as those facts
are shown in the record of the judgment under which such
lands were forfeited, and the amount and validity there ascer-
tained. If the same are to be challenged, it rests on the

objector to show his defence by the production of these former records, and pointing out the alleged defect or vice, if the same does not appear on the face of the collector's return. In this case the delinquent list filed May 9, 1883, does not show, separately, the back tax of each year for the taxes for which the land had been forfeited, but gives the aggregate amount of such back tax, interest and costs, from 1871 to 1878, and from 1879 to 1880,—thus, lot 1, 1871-1878, $112.59; 1879-1880, $25.16. This, we think, is sufficient in this regard.

We have been referred to four cases as settling the rule otherwise. They will be found to have no reference to back taxes under forfeitures. In the first, (*Pickett* v. *Hartsock*, 15 Ill. 279,) the defect in the report was, that it failed to state for what year the taxes were assessed,—they did not purport to be on forfeitures. In *Morgan* v. *Camp*, 16 Ill. 176, the report did not contain the heading required by the statute, and did not show on its face in what county the lands were situated, or the year for which the taxes were assessed. In *Morrill* v. *Swartz*, 39 Ill. 108, the defect in the report was, that it gave the total amount of taxes due, without showing whether they were State or county taxes. To the same effect is the case of *Fox* v. *Turtle*, 55 Ill. 377. These cases are not any authority on the question now before us. But we are not wanting in authority upon this point. In *Pike et al.* v. *People ex rel.* 84 Ill. 80, it was held that the statute does not require that the collector's advertisement and application for judgment against lands for back taxes shall state the year for which the lands were forfeited. The case of *Mann* v. *People ex rel.* 102 Ill. 346, only holds it error to give judgment against land for back taxes not claimed to be due or reported as unpaid. In that case the report, which was likened to a declaration, showed a delinquency only as to the tax of 1880 and back tax of 1879, "and *subsequent* years," and judgment was rendered for the tax of 1880, and back

34—113 ILL.

taxes for the years 1875 to 1879, inclusive,—and this was held erroneous, because the judgment related to taxes for years not subsequent to 1879. The question here was not involved.

It is also claimed that no judgment can be rendered against the lots for such back taxes, separate from the taxes of the current year,—that is, without taxes of the current year are embraced in the judgment. This is wholly untenable. If such were the law, the tax debtor might always defeat an application for judgment by paying the taxes of the current year. It is sufficient that such back taxes are added in the warrant to current taxes. The back taxes in this case were extended in 1882, with the taxes of that year, and the appellant paid the taxes of 1882 alone, as he had the right to do. This payment of a part of the taxes then due and extended against his property, did not relieve it from the lien of the remaining charge. The case of *Stamposki* v. *Stanley*, 109 Ill. 210, does not sustain appellant's position. The point in this regard decided in that case was, that two separate judgments could not lawfully be rendered against a single lot,— one for such back taxes, and the other for the current year's taxes.

Lastly, it is claimed that the appellant is not in a position to question the propriety of the judgment, for the reason that he purchased the lots at a sale made under a decree of court in a partition proceeding. The decree found the amount of the taxes due upon each of the lots, as shown by the collector's books, and ordered an appraisal and sale, subject to the taxes as an incumbrance. There is nothing to show that appellant, in making his purchase, or in any other way, ever assumed or promised to pay the taxes on these lots, or any part thereof. Appellant stands in the same position as any other grantee whose deed is made subject to an existing incumbrance. If he assumes to discharge the same by paying a given amount, as, with a part of the purchase money re-

tained for that purpose, he becomes personally responsible to the holder of the incumbrance; but simply taking a conveyance subject to a prior lien, imposes no personal liability on the grantee to remove the same, but he takes the land subject to the true amount of the incumbrance.