(No. 49800

ILLINOIS POWER COMPANY, Appellant, v. GEORGE E. MAHIN, Director of Revenue, *et al.*, Appellees.

*Opinion filed May 26, 1978.—Rehearing denied September 29, 1978.*

UNDERWOOD and KLUCZYNSKI, JJ., took no part.

RYAN, J., dissenting.

William T. Hart, Christopher B. Nelson, and Joseph P. Collins, of Schiff, Hardin & Waite, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel, Assistant Attorney General, and Bonny Sutker Barezky, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

Isham, Lincoln & Beale, of Chicago, for *amicus curiae* Commonwealth Edison Co.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, George E. Mahin, Director of Revenue for the Department of Revenue, and Alan J. Dixon, Treasurer of the State of Illinois, appealed from the decree of the

circuit court of Macon County entered in plaintiff's action seeking to enjoin the further collection, and for the refund, of taxes assessed by the Department of Revenue, hereafter the Department, and paid by plaintiff under protest. The appellate court reversed (49 Ill. App. 3d 713), and we allowed plaintiff's petition for leave to appeal.

Involved here are the Gas Revenue Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 467.16 *et seq.*) and the Public Utilities Revenue Act (ch. 120, par. 468 *et seq.*), which in nearly identical language provide:

> " 'Gross receipts' means the consideration received for [gas] [electricity] distributed, supplied, furnished or sold to persons for use or consumption and not for resale and for all services rendered in connection therewith, including [receipts] [amounts received] from minimum service charges, and [shall include] [includes] cash, services and property of every kind or nature, and shall be determined without any deduction on account of the cost of the service, product or commodity supplied, the cost of materials used, labor or service costs, or any other expense whatsoever. ***" Ill. Rev. Stat. 1971, ch. 120, pars. 467.16, 468.

Contending that under the foregoing definitions the proceeds of the transactions were taxable, the Department assessed taxes on contributions made by customers to plaintiff in aid of construction, advances received by plaintiff for construction, and sums collected by plaintiff for the rental of equipment and appliances. Under protest, plaintiff paid the taxes thus assessed, and the additional taxes allegedly due for subsequent transactions. Between the dates of December 1, 1972, and May 31, 1977, plaintiff had paid under protest a total of $734,350.32.

The circuit court held that payments received by plaintiff as advances for construction, contributions in aid of construction, and rentals for furnishing or renting equipment or appliances could not be subjected to the taxes, and enjoined defendants "from collecting, assessing

or in any manner imposing Public Utilities Revenue Acts or Gas Revenue Act taxes, interest or penalties by reason of funds obtained by the plaintiff as a result of any of the following transactions: (a) electric advances for construction; (b) electric contributions in aid of construction; (c) gas advances for construction; (d) gas contributions in aid of construction; (e) electric equipment rentals; (f) gas equipment rentals; (g) electric appliances rentals; and (h) gas appliance rentals."

The appellate court reversed, holding that under the plain language of the statutes, "gross receipts" included not only the receipts from the sales of gas and electricity but also the consideration received for all services rendered and all contributions, advances and rental payments. 49 Ill. App. 3d 713, 718.

Plaintiff is a public utility providing electric and gas service to customers in an area of Illinois encompassing approximately 15,000 square miles. It has on file with the Illinois Commerce Commission schedules of rates, and rules and regulations. It appears from the testimony that the contributions in aid of electrical construction were most frequently required by plaintiff in connection with replacement of overhead lines with underground installations. With relation to gas sales and distribution, the advances and contributions were most frequently made in connection with the installation of excess footage to new subdivisions. Although for accounting purposes both contributions and advances in aid of construction are treated as capital and so shown on plaintiff's balance sheet, they are not taken into consideration in fixing the base upon which plaintiff's rate structure is determined. Contributions in aid of construction, whether for electricity or gas, are not refundable. Customer advances for construction are carried as a deferred credit, and if at some point plaintiff determines that an advance is no longer refundable, the item is transferred from the customer advance

account to the contributions-in-aid-of-construction account. Exhibits received in evidence show that approximately two-thirds of the customers' advances for electrical construction and 10% of the advances for gas construction made during the audit period were refunded.

Plaintiff contends that the legislative history and long-standing interpretation of the Public Utilities Revenue Act and the Gas Revenue Tax Act show that they were not intended to tax the transactions here involved. It states correctly that as originally enacted the public utilities tax act (Ill. Rev. Stat. 1937, ch. 120, pars. 468 to 481) applied to electric, gas and telephone utilities, that it contained in the definition of gross receipts the phrase "and for all services rendered in connection therewith" (Ill. Rev. Stat. 1937, ch. 120, par. 468), and also provided that "The words 'transmitting telegraph or telephone messages' shall include the leasing or rental of equipment or property for the transmission of telegraph or telephone messages" (Ill. Rev. Stat. 1937, ch. 120, par. 468). Referring to the 1945 enactments of the Messages Tax Act (Ill. Rev. Stat. 1945, ch. 120, par. 467.1 *et seq.*), the Gas Revenue Tax Act (Ill. Rev. Stat. 1945, ch. 120, par. 467.16 *et seq.*), and the Public Utilities Revenue Act (Ill. Rev. Stat. 1945, ch. 120, par. 468 *et seq.*), it points out that only the Messages Tax Act contained a reference to "the furnishing, for a consideration, of services or facilities (whether owned or leased), or both" (Ill. Rev. Stat. 1945, ch. 120, par. 467.1). It argues that these statutes, contemporaneously enacted, must be considered *in pari materia* and clearly demonstrate the legislative intent that under the Public Utilities Revenue Act and the Gas Revenue Tax Act no tax apply to the furnishing of "services or facilities." Plaintiff argues too that the administrative interpretation over a period of 35 years during which the Department failed to assert that advances, contributions and rentals were includable in "gross receipts" must be considered of great

importance in construing the statute. It is the Department's position that under the plain language of the statutes the taxes apply, and that the alleged failure on the part of the Department to properly enforce the statutes cannot now bar the State from collecting the revenues that are due under their provisions.

We do not find it necessary to resort to the techniques suggested by plaintiff for statutory interpretation. The language of the statutes must be given its plain and ordinary meaning. "It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) The explicit language of the statutes provides that "gross receipts means the consideration received," not only for the gas or electricity furnished or sold, but also the consideration received "for all services rendered in connection therewith." The fact that a part of the consideration is received in the form of a contribution or an advance for purposes of construction does not render it any the less the consideration for the gas or electricity "distributed, supplied, furnished or sold." Similarly, the fact that a portion of the consideration is received in the form of rental payments for equipment or appliances used in the furnishing, distribution or consumption of the gas or electricity does not serve to alter its character as a portion of the consideration.

We do not find persuasive the argument that the

General Assembly intended that only in the Messages Tax Act was the term "gross receipts" to include the proceeds from the leasing or rental of equipment and property. This provision appears to recognize that telephones are ordinarily supplied by the utility, and there is no incongruity in holding that the leasing or rental of equipment and appliances by suppliers of gas and electricity constitute "services rendered in connection" with the sale or distribution of their products.

We have considered plaintiff's argument that the long-standing interpretation by the Department must be given consideration and find apposite the following language from *Martin Oil Service, Inc. v. Department of Revenue* (1971), 49 Ill. 2d 260, 269: "It is undeniable that weight should be given a contemporaneous construction placed on an ambiguous statute by the officers charged with the duty of administering it. We do not believe the statute is ambiguous. Even if ambiguity is assumed, the rule obviously cannot be invoked to prevent those officers from rectifying an erroneous construction. An administrative construction of a statute is not binding if it is erroneous. *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 77 L. Ed. 796, 807; *Superior Coal Co. v. Department of Revenue*, 4 Ill. 2d 459, 468."

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

UNDERWOOD and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, dissenting:

I must dissent from the majority in this case. I believe that the statutes are ambiguous and do not clearly encompass the type of funds here involved, and I disagree with the majority's holding that the Department of Revenue's interpretation of the statutes for 35 years may

be rejected at the whim of the Department, absent any legislative expression.

The statutes themselves do not specifically include either construction contributions or equipment or appliance rentals in their definitions of "gross receipts." I think it is certainly debatable whether these types of payments are encompassed in "consideration received for [gas] [electricity] *** and for all services rendered in connection therewith ***" (Ill. Rev. Stat. 1971, ch. 120, pars. 467.16, 468).

The majority opinion is bottomed on the premise that the language of the statute is clear and therefore requires no construction. I cannot agree. If it is clear that the statute imposes a tax on the transactions here in question, then it is apparent that for 35 years the Department has not been collecting millions of dollars in taxes from utilities to which the State of Illinois was "clearly" entitled. It is hard to believe that such an oversight would have gone unnoticed and that someone would not have been called to politically account for such a sizeable abandonment of State revenue.

Also, if it is clear that such transactions fall within the statutory definition of "gross receipts," why would the legislature find it necessary to include in the Messages Tax Act not only the definition of "gross receipts" that is found in the Gas Revenue Tax Act and in the Public Utilities Revenue Act, but also language which specifically includes proceeds from leasing or rental of equipment or property (Ill. Rev. Stat. 1975, ch. 120, par. 467.1). The majority opinion attempts to explain this additional language by saying that it is a recognition that telephones are ordinarily supplied by the utility. It appears to me that if providing telephones were a part of the services traditionally supplied by the utility, such a service would more likely be recognized as falling within the language, "all services rendered in connection therewith" in the defi-

nition of "gross receipts" and that it would not have been necessary to specifically provide that income from such rentals is taxable. Since the legislature did include this special provision in the Messages Tax Act, I must conclude that it was the intent of the legislature that income from this source is not otherwise taxable and that it was necessary to specifically provide for its taxation. The failure of the legislature to include similar provisions in the Gas Revenue Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 467.16), and the Public Utilities Revenue Act (Ill. Rev. Stat. 1975, ch. 120, par. 468), indicates to me that it was the intention of the legislature that income from these sources was not to be taxed under these acts. If we accept the majority's explanation that the special provision in the Messages Tax Act is a recognition that telephones are ordinarily supplied by the utility, it would appear that the absence of the special language including such transactions in the other two acts also is a recognition that these transactions are not customarily a part of the job of furnishing gas or electricity.

One of the plaintiff's arguments is that the Department of Revenue for 35 years interpreted the statutes as *not* authorizing a tax of this type and should not be permitted to suddenly reverse its position. The majority rejects this contention, noting that while administrative interpretations are usually given weight, erroneous interpretations are not binding. The majority ignores the fact that for 35 years the legislature acquiesced in the Department's previous interpretation, and has not objected to this day. In my opinion, such a long period of legislative acquiescence in the previous interpretation that no tax should be imposed on these payments is the strongest indication of the correctness of that construction. To allow the Department of Revenue to suddenly change its position after all this time, in the absence of any legislative action, is to allow a nameless, faceless, administrative

body, not responsible to the electorate or the legislature, to impose taxation at its whim. If the previous interpretation of the statutes were in fact erroneous, the legislature is the proper body to point out the error, not the Department of Revenue, and not this court, at least under these circumstances. Our constitution (Ill. Const. 1970, art. IX, sec. 1) vests the exclusive power to raise revenue in the General Assembly, the representatives of the People, and not in an administrative body.

For these reasons I dissent from the majority opinion.